STATE OF MISSISSIPPI EX REL., MONROE MCCLURG, ATTORNEY-
GENERAL *v.* MISSISSIPPI COTTON OIL COMPANY ET AL.

TRUSTS AND COMBINES.   *Corporations.   Forfeiture of charter.   Venue.
Quo warranto.   Code* 1892, § 3521.   *Laws* 1900. *p.* 125.

A *quo warranto* proceeding, instituted by the state on the relation
of the attorney-general, under sec. 4 of the act of March 12, 1900,
(Laws 1900, p. 125) to forfeit the charter of a corporation because
it is a party to a trust and combine, is a civil and not a criminal
proceeding, and the venue of such a suit is regulated by code 1892,
§ 3521, providing for the institution of *quo warranto* suits in the
circuit court of the county of defendant's residence.

FROM the circuit court of first district, Hinds county.

HON. ROBERT POWELL, Judge.

The state, on the relation of the attorney-general, appellant,
was the plaintiff in the court below ; the Mississippi Cotton
Oil Company and fifteen other cotton oil companies, appellees,
were defendants there.

The suit was begun in the circuit court of the first district
of Hinds county on an information in the nature of a *quo warranto* by the attorney-general against the defendants, domiciled
in various counties of the state, each doing business in the
county of its domicile—three of them being domiciled in the
first district of the county of Hinds—seeking to have the char-

ters of said companies forfeited for alleged violations of acts
of 1900, c. 88 ("An act to define trusts and combines").
Briefly stated, the declaration charges that the defendant oil
mills, through their proper officers, met in the first district of
Hinds county and entered into a conspiracy, the terms of
which were deliberately formulated, reduced to writing, and
agreed to, by which they fixed noncompetitive prices for cot-
ton seed, noncompetitive prices for the products of cotton
seed, and also by which they undertook to fix freight rates on
cotton seed, and insurance rates upon their several properties;
that this combination, with great ceremony, established an ex-
change, elected officers of this exchange, and made rules and
regulations by which the exchange was to be governed as an
angency for all the parties corporate to the agreement, all of
which were put into full force and effect in the first district of
Hinds county.      Each of the respondents filed a separate de-
murrer setting up the following grounds: (1) That the respond-
ents were improperly joined; (2) That the court was without
jurisdiction in the premises.      The demurrers were sustained
by the court below, the suit dismissed and the state appealed
to the supreme court.

*Monroe McClurg*, attorney-general for appellant.

The venue only is denied.      It is argued that the circuit court
of the first district of Hinds county has no jurisdiction to try
the nonresident defendants because chapter 111 of the code
fixes the venue in the county of their domicile, and it cannot
try the resident defendants because they are improperly en-
joined with the nonresident defendants.      This position is at-
tempted to be supported by the argument that the gray whis-
kers and hoary locks of the ancient writ of *quo warranto* must,
because of its form, control the cause of action, and, secondly,
the misjoinder of the local with the nonresident mills is fatal,
because the judgment cannot be common to all.

The statute settles the question as to whether this proceeding is civil or criminal. It is at once discovered that all of the common law prohibitions and penalties for preventing the forestalling of the open markets in any manner, and by whatever means, is made a criminal offense and is punished as such. Corporations are punished in the only way that they can be punished, by imposing fines and taking from them their privileges and franchises, and persons are punished by fine and imprisonment for wrongs done to the public. For wrongs inflicted upon individuals both corporations and persons must answer in damages. Indeed, the doors of all of the courts of law and equity are wide open for the enforcement of this particular law. Even contractual relations may be destroyed and recoveries prevented by showing that one of the parties has stained his hands by the violation of the provisions of this law. The statute requires the several circuit judges of the state to especially call the attention of the grand jury of their respective districts to this provision, and directs: "This act shall be liberally construed in all courts, to the end that trusts and combines may be suppressed and the benefits arising from competition in business preserved to the people of this state." Therefore. if there is the slightest doubt, or even a grave doubt, as to where the jurisdiction rests it must be resolved to be at the place where the criminal conspiracy was consummated.

The office of the writ is enlarged in its scope so as to be made effective in a state of case other than those specified, and being so enlarged, the remedy must follow the cause of action rather than that the cause of action shall be controlled by the remedy. Forfeiture because of conspiracy, especially a criminal conspiracy consummated by simply uniting unlawfully the lawful use of a lawful power with each other, forms the gravamen. There is no abuse of the corporate franchise, strictly speaking, because of no purpose to do the act by virtue of any power contained in the charter. The conspirators claim to be

doing nothing authorized by either charter or by-law, but to be acting independently of rules governing the management of the corporation; so it is, that the combination, the conspiracy, is the gist of the act, the thing punished, and not because of any attempted abuse of a power contained or supposed to be contained in the grant.

The first district of Hinds county would be the venue for indictment for a criminal conspiracy formed and executed therein. So, the venue in civil damages by one injured by such conspiracy, if not because of the venue of the criminal act itself, because of the residence, or domicile, of one of the joint conspirators; so, also, in a cause like this, partaking of both criminal and civil wrong, the venue must follow the act and the domicile of one of the joint actors—both reasons for fixing the venue here being clearly contained in the cause of action.

When an information in the nature of a *quo warranto*, based upon one or more of the causes mentioned in § 3520, charging some abuse of the franchise, either by misuser or nonuser, is filed then the offending corporation must be followed to its domicile. But to punish it for doing an unlawful and highly penal act, not pretended to be of its supposed granted powers, the venue is assuredly with the act. This case does not present a question of joint liability at all. Individual liability for a joint act is what the state demands.

If the local mills should be acquitted, the nonresidents would not be at all benefited. If the nonresidents conspired here, here they must answer for their wrong.

The remedies provided in § 3520 of the code are purely civil. The purpose is to arrest the doing an unlawful thing without criminal punishment. A dozen citizens may lawfully organize and operate a bank upon their own responsibility, but, if they become incorporated into an oil mill company and undertake to operate a bank under their charter, they would be restrained and their charter revoked, not because it was unlawful to oper-

ate a bank, but because they have abused the power given them to operate an oil mill. They would not be liable to indictment, because they have violated no criminal statute. The violation of a criminal law, mentioned in the eighth paragraph, has reference to some act assumed to be by corporate authority that runs counter to some criminal law—as, if a chartered social club should undertake to sell intoxicating drinks under the belief that, because it was chartered for social purposes, it could dispense, with or without profit, social drinks. Numberless illustrations might be cited. In such cases the remedy would be by *quo warranto* under § 3520, but no other sort of action, either civil or criminal, would follow the abuse of the franchise. A criminal prosecution would lie, but not for violating charter rights, in case of selling beverages. It is not unlawful for either of the three mills domiciled in the city of Jackson, nor for each of the thirteen outside of this city, to fix its own individual prices on cotton seed, cottonseed products, insurance and freight rates, and to refuse to either buy or sell unless those prices are met; nor would any sort of action, civil or criminal, arise because thereof. But when they get together and form a combination on such prices, the purpose and effect of which is to shut off competition between them, then and there a criminal act is committed that may be punished in two ways, viz., by indictment or by recalling the franchise; both criminal proceedings to inflict punishment for a public wrong. Indictment is not the sole remedy for punishing corporations for public wrongs.

Instead of dealing with a substantive cause of action, § 3520 of the code is dealing with remedies, and assigns to the *quo warranto* proceeding certain offices, therein expressly enumerated; not exclusively of any other or all other remedies, nor limiting its office to these particular remedies. An injunction would be as effectual in correcting some of the evils mentioned in § 3520 as the remedy named.

*Miller*, *Smith & Hirsch*, *Leroy Percy & Sweatman*, *Trotter & Knox*, for appellees.

Recognizing the antiquity, the sufficiency and the importance of this writ, the codifiers of 1892 dignified *quo warranto* with a separate chapter and plainly and clearly described when and how it might be used. The course pursued is in accordance with the custom prevalent for many years in this state, but we are now only concerned with the remedy as it is regulated and defined by the code of 1892. Section 3520 enumerates the causes which authorize the application of the remedy and in order to remove from the sphere of doubt any question as to the character of the action. Section 3528 expressly provides: "All such information shall be deemed civil proceedings, and shall be at issue and tried at the return term according to the rules which govern the trials of other civil causes."

We therefore need not concern ourselves about any rights or remedies which relate alone to criminal prosecutions. The legislature recognizing that a corporation might be guillotined by this proceeding undertook to protect the corporation by defining in plain terms how it could be brought into court. Section 3521 governs, and alone governs, the procedure. It is therein prescribed: "The information shall be filed in the circuit court of the county of the residence of the defendants — or in case of a corporation or pretended corporation where its principal office or place of business may be or where it may transact any business and has an agent.

Therefore we have a statute which uses the term "*quo warranto*" without defining it, because it recognizes the fact that it has a well-established meaning at common law, and a declaration of the law makers how this well-defined and well-known writ shall be used, and under the terms of the law as above quoted the writ shall not be used against a corporation except where its principal office or place of business may be, or where it may transact any business, and has an agent, which in other words simply means either the place of its legal domicile or

the place that it has selected as its domicile for the transaction of business.

The chapter on *quo warranto* is practically complete in itself, and is only general in the sense that it applies to all corporations and all individuals who have violated any of the provisions of said chapter. The court will observe that the venue of action, when its original jurisdiction is exercised, is prescribed by § 650 of the code: "Civil actions of which the circuit court has original jurisdiction shall be commenced in the county in which the defendants or any of them may be found, except where otherwise provided," and, of course, the sections relating to *quo warranto* otherwise provide wherein civil actions (and this proceeding by *quo warranto* is a civil action) should be maintained. It is also noticeable how particularly the legislature sought to determine the venue of actions against corporations. Section 651 shows that actions against railroad, express, steamboat, or telegraph corporations may be brought in any county in which any part of such railroad, express route or line, steamboat way or telegraph line may be, and § 652 authorizes actions against insurance companies in any county in which the loss may occur or in the case of fire insurance where the beneficiary resides, or where the principal place of business of such company may be. When it is simply intended to sue a company to recover pecuniary judgment there are a number of places wherein suit can be brought by individuals, alleging damages, or seeking relief, but when the sovereign power of the state invokes the paramount writ of *quo warranto* then the action must be tried where the corporation has a domicile.

In the argument, if we understand the position of the attorney-general, it is sought to be maintained that chapter 38, acts of 1900, being the act defining trusts and combines, authorizes the institution of this suit in Hinds county. We respectfully contend that this act simply enlarged the causes from which forfeiture results, but makes no change in the remedy. There is not a single line thereon contained which authorizes the at-

torney-general to bring the suit at the seat of the government. Neither is there anything in said statute which expressly permits a joinder of the defaulting corporations where a forfeiture of the charter is sought. There is a provision in said act (section 7) which authorizes any person injured or damaged by a trust and combine to sue one or more of the parties, but this authority of power is not vested in any other person, and by the application of the maxim, " *Expressio unius est exclusio alterius,*" the right to sue more than one by virtue of this statute is denied to any other person or corporation except the party injured or damaged; and this, we submit, would also exclude the state or the attorney-general from maintaining an action against two or more corporations to revoke or destroy their charters.

Argued orally by *Monroe McClurg*, attorney-general, for appellant, and by *Joseph Hirsh* and *Leroy Percy*, for appellees.

CALHOON, J., delivered the opinion of the court.

The act of 1900, p. 125, against trusts and combines, is silent as to venue. That was, perhaps, not thought of. Code, § 650, relates to venue in the circuit courts in actions generally, just as § 510 does for chancery courts. Sections 652, 653, and 654 regulate venue in circuit courts as to certain corporations, etc. Venue in suits before justices of the peace is carefully regulated. Section 3097 regulates it in partition proceedings; § 3709, in replevin; § 4248, in suits against the state. Section 2588 (repealed in 1900) prescribed the venue in certain suits. Section 2847 prescribes it in mandamus, and then provision is specially made for cases of several defendants in different counties. In *quo warranto* the venue is specifically provided for by § 3521, and no provision is made, as might have been made, for the case of joint proceedings against several defendants. Jurisdiction is dependent on venue. This court has decided (what is obvious) that in special proceedings,

where the place and the court for them are prescribed, the general law as to place and jurisdiction does not apply. " *Generalia specialibus non derogant* " is a canon of interpretation; and it follows that, in directing *quo warranto* in the act of 1900, the special proceeding provided by the code was intended, with all its incidents. There was no mention of venue or court, and it must be assumed that the legislature was content with the code chapter on that subject. It is inadmissible to make the law what perhaps it would have been made if the particular matter had been in the mind of the legislature. Attention is called to the following authorities: Sedg. St. & Const. Law, 98, note " a; " *Nugent* v. *Powell*, 63 Miss., 99; *State* v. *Piazza*, 66 Miss., 426 (6 So. Rep., 316); *Pate* v. *Taylor*, 66 Miss., 97 (5 So. Rep., 515); *Baum* v. *Burns*, 66 Miss., 124 (5 So. Rep., 697); *Archibald* v. *Railroad Co.*, 66 Miss., 424 (6 So. Rep., 238). The act of 1900, chap. 88, p. 125, being silent as to venue, but specific in section 4 that the attorney-general " shall enforce this provision by a proceeding in the nature of a writ of *quo warranto*," we are necessarily driven to the venue prescribed in the chapter of the code on that subject. In a proceeding by indictment the venue is prescribed to be the county where the offense was committed. But the case before us is in no legal sense a criminal proceeding. It is clearly a civil proceeding, and the petition concludes with the prayer of "judgment of forfeiture and ouster against each of said corporations," and this is its only prayer. To do this it has always been the law that the place of proceeding shall be the county where the corporation has its principal office or place of business. The *argumentum ab inconvenienti* has no place here. This argument is often of great force in the interpretation of a doubtful statute, but it can never supply a missing statute. Unless the legislature so enacts, we cannot suppose it means to change its policy, co-existent with the whole history of the legislation of the state, that the forfeiture of its charters shall be adjudged only at the domicile of its creature. The act of 1900

has not said this, either expressly or by necessary implication, and so the judgment of the court appealed from is

*Affirmed.*